No. 24-1722

# United States Court of Appeals
# For the First Circuit

---

In re
OCEAN STATE, LLC, NEW HARBOR CAPITAL FUND
LP, NEW HARBOR CAPITAL FUND II LP, NEW
HARBOR CAPITAL MANAGEMENT LP, BLUEPRINT
TEST PREPARATION, LLC, FYZICAL ACQUISITION
HOLDINGS, LLC,
*Petitioners.*

---

ON A PETITION FOR A WRIT OF MANDAMUS TO
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
CASE NO. 1:20-cv-00538-JJM-PAS

---

**RESPONDENT'S ANSWER TO THE
PETITION FOR A WRIT OF MANDAMUS**

---

Eric E. Renner (CA1# 1136562)
DUFFY & SWEENEY, LTD.
321 South Main Street
Suite 400
Providence, RI 02903
Tel:  (401) 455-0700
Fax: (401) 455-0701
erenner@duffysweeney.com

*Attorneys for Plaintiff, United States of
America ex rel James R. Berkley*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................i

REASONS THAT ORAL ARGUMENT SHOULD BE HEARD.......................... iii

TABLE OF AUTHORITIES ......................................................................iv

RESPONSE TO STATEMENT OF THE REQUESTED RELIEF .........................1

RESPONSE TO JURISDICTIONAL STATEMENT ...............................................5

COUNTERSTATEMENT OF THE ISSUE...............................................................5

COUNTERSTATEMENT OF THE CASE ...............................................................5

    I.        The Discovery Dispute.........................................................................5

    II.      Relator's Motion to Compel and the District Court's Order ..............10

COUNTERSTATEMENT OF STANDARD OF REVIEW .....................................12

ARGUMENT ...........................................................................................................14

    I.        Petitioners Should Submit Accurate, Legible, Suitably Indexed
            and Paginated Copies of the Record Exhibits .....................................14

    II.      Petitioners Have Identified No Clear and Indisputable
            Right to Relief ......................................................................................15

          A.      Mandamus Should Not Issue to Second-Guess
                the District Court's Exercise of Its Discretion in a
                Discovery Order.......................................................................15

          B.      Because Petitioners are Asserting a Good Faith
                Belief Affirmative Defense and Are Relying on Legal
                Advice Concerning the PPP Loans, Fundamental
                Fairness Requires Full Disclosure of this Advice....................15

          C.      Petitioners' Unhappiness with the District Court's Order
                 is Not a Basis for Mandamus ...................................................16

               1.      Petitioners are Furtively Invoking an Advice of
                     Counsel Defense ...........................................................17

2.  Petitioners Have Already Used and Relied on Privileged Communications ............................................ 22

3.  Petitioners Resort to Hyperbole and Fear Mongering .... 24

III.  Petitioners Have Other Adequate Sources of Relief .......................... 26

A.  A Post-Judgment Appeal is Adequate and Available .............. 26

B.  Petitioners Fail to Show Irreparable Injury .............................. 27

IV.  The Equities Do Not Favor Issuance of the Writ ................................ 28

CONCLUSION ..................................................................................... 31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

### REASONS THAT ORAL ARGUMENT SHOULD BE HEARD

Plaintiff/Relator-Respondent, United States of America ex rel. James R. Berkley, requests oral argument.  Because the parties' briefs may not answer every question the Court may have, Relator believes that oral argument will aid the Court's decisional process.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. City of Bos.*,
54 F.3d 18 (1st Cir. 1995) ....................................................................4, 27

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ..........................................................................12, 13

*Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*,
78 F.3d 698 (1st Cir. 1996) ......................................................................14

*Da Graca v. Souza*,
991 F.3d 60 (1st Cir. 2021) ......................................................................12

*Doe v. Mass. Inst. of Tech.*,
46 F.4th 61 (1st Cir. 2022) ........................................................................9

*Does 1-3 v. Mills*,
39 F.4th 20 (1st Cir. 2022) ........................................................................9

*Henry v. Quicken Loans, Inc.*,
263 F.R.D. 458 (E.D. Mich. 2008) .....................................................19, 23

*In re Bulger*,
710 F.3d 42 (1st Cir.2013) ..................................................................12, 13

*In re Bushkin Assocs., Inc.*,
864 F.2d 241 (1st Cir. 1989) ....................................................................12

*In re EchoStar Communications Corp.*,
448 F. 3d 1294 (Fed. Cir. 2006)................................................................29

*In re Grand Jury Subpoena*,
909 F.3d 26 (1st Cir. 2018) ...................................................................4, 27

*In re Insurers Syndicate for Joint Underwriting of Medico-Hosp. Pro. Liab. Ins*.,
864 F.2d 208 (1st Cir. 1988) ...............................................................1, 15

iv

*In re Itron, Inc.,*
883 F.3d 553 (5th Cir. 2018) ................................................................22, 23

*In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.),*
348 F.3d 16 (1st Cir. 2003) ..................................1, 11, 12, 14, 16, 20, 21, 25, 26, 31

*In re Recticel Foam Corp.,*
859 F.2d 1000 (1st Cir. 1988) .............................................................5, 27

*In re Tsarnaev,*
780 F.3d 14 (1st Cir. 2015) ..........................................................12, 13, 26, 27

*Mohawk Industries, Inc. v. Carpenter,*
558 U.S. 100 (2009) .......................................................................3, 26, 27

*Neece v. City of Chicopee,*
106 F.4th 83 (1st Cir. 2024) ...............................................................24

*Pearson v. First N.H. Mortg. Corp.,*
200 F.3d 30 (1st Cir. 1999) ...............................................................2, 19

*Salmon v. Lang,*
57 F.4th 296 (1st Cir. 2022) ..............................................................1, 15

*Texaco P.R., Inc. v. Dep't of Consumer Affairs,*
60 F.3d 867 (1st Cir.1995) ................................................................14

*United States v. Bilzerian,*
926 F.2d 1285 (2d Cir. 1991) .............................................................19, 29

*United States v. Chin,*
No. 1:21-CR-10256-IT, 2024 WL 2883366 (D. Mass. June 7, 2024).........18, 20, 21

*United States v. Desir,*
273 F.3d 39 (1st Cir. 2001) ...........................................................12, 14, 15

*United States v. Gorski,*
36 F. Supp. 3d 256 (D. Mass. 2014) ......................................................21

v

*United States v. Gorski*,
807 F.3d 451 (1st Cir. 2015) ...................................................................26

*United States v. Liberty*,
No. 2:19-CR-00030-GZS, 2020 WL 6386388 (D. Me. Oct. 30, 2020) ............20, 21

*United States v. Workman*,
138 F.3d 1261 (8th Cir. 1998) .................................................................16

*United States ex rel. Long v. Janssen Biotech, Inc*.,
No. CV 16-12182-FDS, 2024 WL 862308 (D. Mass. Feb. 29, 2024).........18, 19, 20

*United States ex rel. Poehling v. UnitedHealth Group, Inc.,*
No. 2:16-cv-08697 (C.D. Cal. May 13, 2022) (Ex. K)...........................................31

*United States ex rel. Schutte v. SuperValu Inc*.,
598 U.S. 739 (2023).....................................................................4, 25, 28, 29, 30, 31

*Universal Ins. Co. v. Off. of Ins. Com'r*,
755 F.3d 34 (1st Cir. 2014) ......................................................................1

## Statutes

28 U.S.C. § 1291 .....................................................................................5

31 U.S.C. § 3729(a)(1)(A), (B)...................................................................6

31 U.S.C. § 3729(b)(1).............................................................................6

## Rules

Fed. R. App. P. 30(d), (e) .........................................................................14

Fed. R. App. P. 32(b)(2) ...........................................................................14

## Other Authorities

Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence
§ 504.41[1] (Joseph M. McLaughlin ed. 1977) ......................................................16

vi

*U.S. Customs and Border Protection, What Every Member of the Trade Community Should Know About: Reasonable Care* (September 2017) ..................30

*Brief of Chamber of Commerce of the United States of America, et al.,*
*United States ex rel. Schutte v. SuperValu Inc.,*
598 U.S. 739 (2023), 2023 WL 2730872 ...............................................................30

*Respondents' Brief,*
*United States ex rel. Schutte v. SuperValu Inc.,*
598 U.S. 739 (2023), 2023 WL 2626898 ...............................................................30

# RESPONSE TO STATEMENT OF THE REQUESTED RELIEF[1]

Unhappy with the district court's granting of Relator's Motion to Compel and denial of their Motion for Reconsideration, Petitioners paint the district court's discovery Order as "unprecedented" and "departing from every case in this Circuit" in the hopes of having this Court invoke its extraordinary mandamus power. Pet. at 1. While the Mark Twain saying "never let the truth get in the way of a good story" makes for good storytelling, it makes for poor legal advocacy. The district court did not commit "manifest errors," as Petitioners spin it. Quite the opposite. In acting within its broad discretion over discovery disputes, *see, e.g., Salmon v. Lang*, 57 F.4th 296, 326 (1st Cir. 2022); *In re Insurers Syndicate for Joint Underwriting of Medico-Hosp. Pro. Liab. Ins*., 864 F.2d 208, 211 (1st Cir. 1988), the district court faithfully applied this Court's privilege-waiver analysis stated in *In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16 (1st Cir. 2003) and its progeny and appropriately found an implied waiver of the attorney-client

---

[1] References to "Ex. __" are to the Exhibits submitted by Petitioners. References to "Pet. __" are to the Petition. Capitalized and abbreviated terms have the same meaning as set forth in Relator's Motion to Compel Discovery of Attorney-Client Communications Concerning the Legal Advice Received by Defendants Regarding the PPP Loans at Issue ("Motion to Compel") (Ex. B), Relator's Reply in Support of Motion to Compel ("Reply") (Ex. D) and Relator's Opposition to Defendants' Motion for Reconsideration (Ex. G). While Relator develops his arguments below, where appropriate, Relator relies on the points and authorities raised in his Motion to Compel, Reply, and Opp. to Defendants' Motion for Reconsideration. *Cf. Universal Ins. Co. v. Off. of Ins. Com'r*, 755 F.3d 34, 38-39 (1st Cir. 2014).

privilege based on the specific facts of this case. There is no error. Mandamus is unwarranted for this reason alone.

As they did below, Petitioners make false and misleading statements to this Court about their subjective good faith belief affirmative defense and their *use* of attorney-client communications to support that defense, evidencing a blatant disrespect for the duty of candor owed to this Court. *See e.g., Pearson v. First N.H. Mortg. Corp*., 200 F.3d 30, 38 (1st Cir. 1999) (discussing duty of candor). Most notably, Petitioners fail to acknowledge their Second Supplemental Responses to Relator's Contention Interrogatories, in which Petitioners rely on testimony and various heavily redacted emails and other documents that were informed by and prepared based on advice received from Defendants' counsel in support of their scienter defense and assertion of their subjective good faith belief in the lawfulness of their conduct. Ex. B at Ex. 1 at Nos. 12, 18; Ex. C at Ex. 3 at No. 18.

A plain reading of Relator's briefing below and the district court's rulings shows that the district court did not find waiver solely because Petitioners contested the scienter element of Relator's FCA claims and produced nonprivileged information in discovery, as Petitioners would have this Court believe. In this way, the case law upon which Petitioners rely—from both within and outside this Circuit—lends Petitioners no support. Rather, in keeping with this Court's implied waiver case law, the district court reviewed the record and determined that

2

Petitioners waived the attorney client privilege through their affirmative acts of asserting a good faith belief affirmative defense and *relying on* and *using* attorney-client communications in support of that defense. Ex. A at 3-4; Ex. E. Petitioners' affirmative defense and their own interrogatory answers, deposition testimony and documents show that they have deliberately placed their supposed good faith belief and documents and testimony built on their attorneys' legal advice concerning the PPP loans squarely in issue, and they are now so enmeshed in the key factual dispute of whether Petitioners knowingly violated the FCA that it would be fundamentally unfair to withhold the material.

Mandamus is also unwarranted because Petitioners have not shown that mandamus review is the only adequate means by which they can obtain meaningful relief. Petitioners' arguments to the contrary are squarely at odds with the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, where the Supreme Court made clear that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege ... by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." 558 U.S. 100, 109 (2009). While mandamus relief may be available for "particularly injurious" privilege rulings, *id.* at 110, Petitioners have not pointed to any unique circumstances here that might justify this Court's immediate review. Moreover, Petitioners could refuse to disclose the

documents at issue and face sanctions such that a criminal contempt proceeding could be initiated to ultimately provide the judicial review they seek.  By failing to accept that option, they have failed to show that no adequate alternative remedy exists.  *See In re Grand Jury Subpoena*, 909 F.3d 26, 28–29 (1st Cir. 2018); *Bennett v. City of Bos.*, 54 F.3d 18, 20 (1st Cir. 1995).

Petitioners also once again resort to hyperbole and fear mongering in claiming that the district court's ruling would leave both them and other FCA defendants with an untenable Hobson's Choice in light of the Supreme Court's ruling in *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023).  Pet. at 3-4, 27.  Not so. Petitioners' argument is built on a false premise, namely, their assertion that their "reasonable belief arguments presented at trial do not and will not rely on any privileged attorney advice."  Pet. at 6.  Petitioners are not merely denying that they acted with scienter.  Rather, they are advancing a subjective good faith belief affirmative defense to negate scienter and, to support that defense, are relying on documents and testimony showing that their attorneys not only reviewed and informed the conduct that Relator alleges violated the FCA but, more significantly, that the attorneys approved of Petitioners engaging in this alleged illegal conduct. Petitioners are relying on these materials to gain a tactical advantage in the litigation by creating the appearance that their attorneys determined and advised them that the PPP loans complied with all the requisite rules and guidance for PPP loans.  Thus,

as the district court determined, fundamental fairness requires discovery into the advice Petitioners received from their attorneys regarding the PPP loans.  Ex. at 3-4; Ex. E.

## RESPONSE TO JURISDICTIONAL STATEMENT

The district court's discovery order is not a final decision as required by 28 U.S.C. § 1291; the so-called "collateral order" exception to the finality principle does not apply; and the Petition "fails to portray circumstances so extraordinary as to energize [the Court's] mandamus powers."  *See In re Recticel Foam Corp.*, 859 F.2d 1000, 1007 (1st Cir. 1988).  Accordingly, the merits of the privilege waiver dispute are not properly before the Court in this proceeding and the Court should decline to exercise its mandamus jurisdiction

## COUNTERSTATEMENT OF THE ISSUE

Whether the district court's determination that Petitioners waived the attorney client privilege through their affirmative acts of relying on and using attorney-client communications in support of their good faith belief affirmative defense constituted clear and indisputable abuse of discretion or error of law.

## COUNTERSTATEMENT OF THE CASE

### I.    The Discovery Dispute

Relator commenced this qui tam action in December 2020, alleging that Petitioners defrauded the United States Government in violation of the FCA, 31

U.S.C. § 3729 *et seq.*, when they knowingly presented and caused to be presented false claims for payment to the government and used false records and statements that caused false claims to be paid by the government, in violation of FCA subsections 3729(a)(1)(A) and (B). One of the principal factual disputes in this case is whether Petitioners acted knowingly in violating the FCA (i.e., with scienter). Under the FCA, the term "knowingly" means that a person, with respect to information contained in a claim, (i) "has actual knowledge of the information"; (ii) "acts in deliberate ignorance of the truth or falsity of the information"; or (iii) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).

In their Answer, Petitioners denied they acted knowingly in violating the FCA. Ex. J at ¶¶ 242, 246. Petitioners also asserted an affirmative defense that specifically disputes the scienter element by arguing that they had a subjective good faith belief that their conduct was lawful: "Relator's claims are barred, in whole or in part, because [Petitioners] had a reasonable belief in the lawfulness of their conduct." Ex. J at Affirmative Defense No. 5. Petitioners also denied a host of Relator's allegations concerning the scienter element and raised their alleged subjective good faith belief that their conduct was lawful: "[Petitioners] state that each [Petitioner] submitting a PPP loan application reasonably believed that they acted in compliance with existing federal laws, regulations, and relevant authoritative guidance in

6

connection with the submission of any PPP loan application or otherwise adopted an interpretation of ambiguous laws, regulations, and relevant authoritative guidance that was objectively reasonable." Ex. J at ¶¶ 133, 176, 177, 182, 183, 186, 214, 216, 219, 229, 230.

To prove his claims and rebut Petitioners' affirmative scienter-related defenses, Relator propounded discovery relevant to the issues of whether Petitioners acted with a good faith belief that their PPP loans were lawful. When asked in a contention interrogatory to state the basis for their good faith belief affirmative defense, Petitioners responded that "[Petitioners] believed that all of their conduct with respect to the PPP loan application and all of the certifications contained in the PPP loan application submitted by Ocean State, Blueprint, and Fyzical were lawful and accurate." Ex. B at Ex. 1 at No. 18;  Ex. C at Ex. 3 at No. 18.  Further, when asked to explain in detail how they determined they met the economic necessity certification contained in the PPP Loan Application, Petitioners responded that their determination was based on consultation with their attorneys: "[Petitioner] further states that it consulted with attorneys in relation to its PPP loan application."  Ex. B at Ex. 1 at No. 12.  However, despite raising their subjective good faith belief as a sword, Petitioners simultaneously raised the attorney-client privilege as a shield in a footnote: "By making this statement in direct response to Relator's Interrogatory, [Petitioner] does not waive or relinquish any attorney-client privilege, work-product

protections, or other privileges and protections, nor is [Petitioner] invoking an "advice of counsel" defense by making this statement." Ex. B at Ex. 1 at No. 12.

Petitioners are using the attorney-client privilege as both a sword and shield to attempt to manufacture what effectively would be an irrebuttable inference that could potentially negate Relator's allegation that Petitioners acted knowingly in violating the FCA. To accomplish this, Petitioners produced documents, answered interrogatories and allowed management and board members to provide deposition testimony evidencing four general claims supporting their good faith belief defense, as stated in their Second Supplemental Responses to Relator's Contention Interrogatory No. 18:

1. Petitioners consulted with attorneys in relation to the PPP loan applications;

2. Petitioners believed that all of their conduct with respect to the PPP loan application and all of the certifications contained in the PPP loan applications were lawful and accurate;

3. Petitioners diligently investigated the applicable laws and regulations in order to ensure the lawfulness of their conduct; and

4. The boards of each company reviewed applicable regulations and supporting documentation prior to determining whether to approve the PPP loans and reached the same conclusion that the applications were lawful—including any New Harbor Defendant employees or agents serving as board members of Ocean State, Fyzical, or Blueprint.

Ex. B at Ex. 1 at Nos. 12, 18; Ex. C at Ex. 3 at No. 18.

8

In support of those assertions, Petitioners rely on various emails and other documents that were informed by and prepared based on advice received from Petitioners' counsel.  For example, in support of the second assertion, Petitioners proffer the documents Bates numbered PPPLITDEFS_00011195; PPPLITDEFS_00089390; PPPLITDEFS_00080744; PPPLITDEFS_00084414; and PPPLITDEFS_00090942.  Each of these documents is an email that includes redacted legal advice concerning the PPP loans at issue.  Ex. M; Ex. N.  In support of the third assertion, Petitioners proffer PPPLITDEFS_00089323, which is also an email that includes redacted legal advice concerning a key issue in this case, namely "the gray area of [Private Equity] owned companies applying for PPP."  Ex. M; Ex. N.  They also pointed to deposition testimony showing Petitioners' receipt of legal of advice.  Ex. B at Ex. 2.  And in support of the fourth assertion, Petitioners proffer PPPLITDEFS_00093122; PPPLITDEFS_00080448; and PPPLITDEFS_00092191, which are also emails that include redacted legal advice.  Ex. M; Ex. N.[2]

Moreover, the documents supporting the fourth assertion show that the boards of each company reviewed the so-called "business case" memos drafted after the fact with the advice of counsel to "paper the file" with Petitioners' supposed need

---

[2] Petitioners designated these materials as "Confidential" or "Attorney's Eyes Only" pursuant to the parties' Discovery Confidentiality Order.  Relator does not concede that the materials are appropriately designated and leaves it to Petitioners to justify any sealing of these materials.  *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 67 (1st Cir. 2022); *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022).

and eligibility analysis, rationale and decision to apply for the PPP loans in connection with the board of director consents approving the PPP loans.  Ex. M; Ex. N.  That is, these documents show that Petitioners' boards directly relied on the legal advice received from Petitioners' counsel in reaching the determination to approve the PPP loans.

Standing behind the shield of privilege, Petitioners objected to providing this relevant evidence despite their intention to testify about their alleged good faith belief and use the redacted emails, business case memos and director consents, which are tantamount to legal opinions, as a sword to try to strike down Relator's claims on the merits.  While they provided Relator with redacted versions of the memos and emails, Petitioners withheld the underlying legal analyses under a claim of privilege.  Similarly, on instruction from counsel, Petitioners repeatedly refused at deposition to provide any information concerning the legal advice underpinning their good faith belief defense.  E.g., Ex. C at 6.  As Relator explained in his Reply, that legal advice pertains to critical issues involved in this case.   Ex. D at 5-6.

## II.    Relator's Motion to Compel and the District Court's Order

Relator filed his Motion to Compel to address the significant prejudice that Petitioners caused by engaging in two affirmative acts in defending against Relator's claims that they violated the FCA: (1) asserting an affirmative defense that they had a subjective good faith belief that their conduct with respect to the PPP applications

and the certifications contained therein were lawful and accurate; and (2) using and relying on information and documents that purportedly form and evidence their belief that were based on and prepared with the advice of counsel showing (or in the least suggesting) that their attorneys not only reviewed but also subsequently *approved* the PPP loans—i.e., redacted emails, business case memos, and board of director consents parroting the business case memos—while blocking Relator from taking full discovery of the legal advice Petitioners received that might disprove their purported belief.

On June 26, 2024, after fulsome briefing by the parties, the district court issued its Order granting Relator's Motion to Compel.  Ex. A.  After crystallizing the dispute, the district court determined that "since [Petitioners] are asserting and vigorously supporting the assertion that they acted in good faith in applying for the PPP loan after consulting their attorneys who participated in the application process on some levels, [Relator] should be allowed to review the communications that [Petitioners] received from their attorneys on this issue. To hold otherwise, in this case, ***on these facts***, would be unfair to [Relator] and to the ultimate trier of fact." Ex. A at 3-4 (emphasis added) (*quoting In re XYZ Corp.,* 348 F.3d at 24).

Petitioners then moved for reconsideration, which the district court denied on July 26, 2024 in a strident text order.  (Ex. E).  The district court noted in its order that "[t]he record is replete with examples of [Petitioners] placing "protected

information in issue for personal benefit, through [their] affirmative acts."  Ex. E (*quoting In re XYZ Corp.,* 348 F.3d at 24).  The district court also correctly rejected Petitioners' false claim that they are not invoking an advice of counsel defense: "While the [Petitioners] assert that they are not formally invoking the 'advice of counsel' defense, the record is clear that they premise their defense that they acted legally in significant part on the input of their attorneys.  It would be fundamentally unfair to deny [Relator] access to the evidence upon which the [Petitioners] rely."  Ex. E (*citing United States v. Desir*, 273 F.3d 39, 45 (1st Cir. 2001)).

## COUNTERSTATEMENT OF STANDARD OF REVIEW

The writ of mandamus has "stringent requirements," *In re Tsarnaev*, 780 F.3d 14, 16 (1st Cir. 2015), and is "generally thought an inappropriate prism through which to inspect exercises of judicial discretion," *id*. at 18 (*quoting In re Bushkin Assocs., Inc.*, 864 F.2d 241, 245 (1st Cir. 1989)).  "'[O]nly exceptional circumstances amounting to a judicial "usurpation of power," ' or a 'clear abuse of discretion,' 'will justify the invocation of this extraordinary remedy.'"  *Da Graca v. Souza*, 991 F.3d 60, 63–64 (1st Cir. 2021) (*quoting Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (citations omitted)).

Because Petitioners' privilege waiver argument "arises not on direct appeal after trial but on petition for a writ of mandamus," it is subject to "an even more exacting burden" than it would be on direct appeal.  *In re Bulger*, 710 F.3d 42, 45

(1st Cir.2013).  Petitioners must "satisfy the burden of showing that [their] right to issuance of the writ is clear and indisputable." *Id*. (citations, internal quotation marks, and alteration omitted).  "That standard of review is extraordinarily deferential to the ruling of the trial judge." *In re Tsarnaev*, 780 F.3d at 19.  In addition to overcoming the daunting first requirement, Petitioners must also meet two other standards.  First, they must demonstrate that they have no other adequate source of relief; in other words, they must show irreparable harm. *In re Tsarnaev*, 780 F.3d at 19 (citing *In re Bulger*, 710 F.3d at 45 (citation omitted)).  This condition is "designed to ensure that the writ will not be used as a substitute for the regular appeals process," *Cheney*, 542 U.S. at 380–81 (citation omitted), which, as noted, remains open to Petitioners after trial should they not prevail.  And, second, "[Petitioners] must demonstrate that, on balance, the equities favor issuance of the writ." *In re Bulger*, 710 F.3d at 45.

Taken together, these standards mean that, when considering a petition for the extraordinary writ of mandamus, the Court is bound to employ an extraordinarily deferential form of review.  Relief may be allowed here only: (1) if it is clear and indisputable that the district court erred in granting Relator's Motion to Compel, (2) Petitioners have no other adequate source of relief and would suffer irreparable harm if the district court's Order were not vacated, and (3) the equities clearly favor Petitioners. *See id*. at 45-46.  None of these onerous standards is met here.

13

Additionally, when an appeal concerns "a claim of privilege, the standard of review depends on the precise issue being litigated." *In re XYZ Corp.,* 348 F.3d at 21. The Court reviews a district court's evidentiary decisions for abuse of discretion, its underlying findings of fact for clear error, and questions of law de novo. *Id.* The fact that the district court did not provide a detailed account of its reasoning does not change the standard. *Id.* at 21–22. "Whether the attorney-client privilege applies is a factual determination for the trial court which will only be reversed if it is clearly erroneous." *Desir*, 273 F.3d at 45 (*citing Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 883 (1st Cir.1995)).

## ARGUMENT

### I.    Petitioners Should Submit Accurate, Legible, Suitably Indexed and Paginated Copies of the Record Exhibits

Relator first starts with a procedural matter. Petitioners should be ordered to submit accurate, legible, suitably indexed and paginated copies of the record exhibits as they were submitted to the district court. *Cf.* Fed. R. App. P. 30(d), (e) and Fed. R. App. P. 32(b)(2). The scanned exhibits that Petitioners submitted are faded and blurry and thus difficult to read, fail to include Relator's color highlighting in the exhibits indicating pertinent material, are not indexed in PDF, and are not consecutively paginated. Both Relator and the Court's review of the record is hampered by Petitioners' failure to provide a correct and intelligible set of exhibits. *See Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*, 78 F.3d 698, 700-01 (1st Cir. 1996).

14

II.    **Petitioners Have Identified No Clear and Indisputable Right to Relief**

A.    **Mandamus Should Not Issue to Second-Guess the District Court's Exercise of Its Discretion in a Discovery Order**

This Court has noted that "the right to the writ must be 'clear and indisputable'" and that "[i]t is for precisely that reason that mandamus, as a general rule, will not issue to control exercises of judicial discretion." *In re Insurers Syndicate*, 864 F.2d at 211. The district court has broad discretion over discovery matters. *Id*.; *see also Salmon*, 57 F.4th at 326. Given that broad discretion, this Court intervenes "only upon a clear showing of manifest injustice, that is, where the [district] court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." *Salmon*, 57 F.4th at 326 (internal citations and quotations omitted). Given the limited task on mandamus, the Court should not disturb the district court's case-specific fact findings and exercise of its discretion.

B.    **Because Petitioners are Asserting a Good Faith Belief Affirmative Defense and Are Relying on Legal Advice Concerning the PPP Loans, Fundamental Fairness Requires Full Disclosure of this Advice**

The district court's privilege waiver factual determination plainly was not clearly erroneous. *Desir*, 273 F.3d at 45. The principle of "waiver by implication" is based on considerations of fairness. *See, e.g., Desir*, 273 F.3d at 45 (explaining that "implied waiver is to prevent defendant from 'selectively assert[ing] the privilege to block the introduction of information harmful to his case after

15

introducing other aspects' of attorney-client communications that are beneficial; 'attorney-client privilege cannot be used both as a shield and a sword'") (*quoting United States v. Workman*, 138 F.3d 1261, 1263–64 (8th Cir. 1998)).

In discussing the principle of waiver by implication, this Court has quoted the following passage from Weinstein's Federal Evidence:

> [T]he courts have identified a common denominator in waiver by implication: in each case, the party asserting privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information" would have been unfair to that opposing party.

*In re XYZ Corp.,* 348 F.3d at 24 (*quoting* Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 504.41[1] (Joseph M. McLaughlin ed. 1977)).

Accordingly, the touchstone of waiver analysis is fairness.  As the district court correctly determined, a subject matter waiver of attorney-client privilege is appropriate here because Petitioners are attempting to use otherwise protected information as "both a sword and a shield" in order to gain an unfair tactical advantage over Relator.  Ex. A at 4 (*quoting In re XYZ Corp.,* 348 F.3d at 24).

## C.   Petitioners' Unhappiness with the District Court's Order is Not a Basis for Mandamus

Petitioners simply rehash their argument that the district court departed from First Circuit case law on implied privilege waiver because (they claim) they have not taken any affirmative act to place protected information in issue.  Pet. at 9-10,

17-19.  That is false.  The district court made a factual determination that Petitioners waived privilege based on their affirmative acts.

### 1.    Petitioners are Furtively Invoking an Advice of Counsel Defense

Petitioners assert that they have not invoked an advice of counsel defense. According to Petitioners, they have supported their good-faith belief defense on the grounds that they personally believed the "certifications contained in the PPP loan applications … were lawful and accurate," they "investigated the applicable laws and regulations in order to ensure the lawfulness of their conduct," and their boards of directors "reviewed applicable regulations and supporting documentation prior to determining whether to approve the PPP loans."  Pet. at 15-16 (*citing* Ex. C at Ex. 3 at 14).

Petitioners miss the mark entirely.  They are pointing to their statements in their Second Supplemental Responses to Relator's Contention Interrogatory No. 18, which asked them to state the basis for their affirmative defense that they had a reasonable belief in the lawfulness of their conduct.  Yet they conveniently omit reference to all the documents and testimony they proffer to support those assertions. *See* supra at 8-10.  As noted above and by the district court, Petitioners rely on testimony and various redacted emails and other documents that were informed by and prepared based on advice received from Petitioners' counsel in support of their assertions of their subjective good faith belief in the lawfulness of their conduct.

17

Petitioners have indeed put the advice they received from their attorneys regarding the PPP loans at issue through affirmative acts: first by raising the good faith belief affirmative defense and then by using and relying on testimony and documentary evidence based on attorney advice.  In other words, as the district court determined, Petitioners are relying on attorney communications to support their good faith belief defense.  Ex. A; Ex. E.  Petitioners conceded below that they *would* waive privilege if they "seek to argue or introduce evidence of their attorneys' involvement."  Ex. F at 3 (*citing United States v. Chin*, No. 1:21-CR-10256-IT, 2024 WL 2883366, at *3 (D. Mass. June 7, 2024) and *United States ex rel. Long v. Janssen Biotech, Inc*., No. CV 16-12182-FDS, 2024 WL 862308, at *2-3 (D. Mass. Feb. 29, 2024)).  But that is exactly what they are doing where they have both argued and introduced evidence of their attorneys' involvement with the PPP loans to negate the scienter element that Relator must prove.

Petitioners' defense is not that they actually complied with the law; their defense is that they had a good faith *belief* they complied with the law.  That is the critical distinction.  Because Petitioners assert their subjective good faith belief on matters of legal compliance, a determination of such subjective good faith necessarily depends on the advice given to Petitioners by their counsel, even if Petitioners claim they do not seek to establish their good faith based on such advice (which they do).  Such advice may or may not have been acted upon and colors

18

Petitioners' assertion of a subjective good faith belief.  As Relator noted in his Motion to Compel, where, as here, subjective good faith is asserted with respect to a defendant's understanding and compliance with the law, the defendant's knowledge about the law is vital, and the advice of counsel is highly relevant to the legal significance of the client's conduct.  Ex. B at 10-12 (citing cases).  *See also Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 468 (E.D. Mich. 2008) (noting that "courts have found that when a party offers an affirmative defense involving state of mind that is in some way predicated on the advice of counsel, such an action may waive by implication the attorney-client privilege as to the subject matter of such advice.") (*citing United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).

Petitioners' assertion of their good faith belief defense (especially when coupled with their reliance on documents informed by counsel) triggers an implied waiver of their privilege because Relator has no way of testing or rebutting this defense unless he is able to examine the privileged communications and legal advice Petitioners received concerning their eligibility for the PPP loans and the certifications made in the loan applications.

Petitioners continue their troubling practice of analogizing inapposite case law that does not support their position while arguing otherwise to the Court, which does not comport with their duty of candor.  *See Pearson*, 200 F.3d at 38.  As Relator explained to the district court, the *Janssen* case that Petitioners cite heavily—and

19

fault the district court for not discussing—actually supports Relator's position and is distinguishable in several critical respects. Ex. D at 2, 7-8. Unlike in *Janssen*, it is not Petitioners' mere disclosure of documents and information in discovery that warrants a waiver of the attorney-client privilege. Rather, it is their good faith belief affirmative defense and their *use* of the documents and testimony that warrants a waiver. 2024 WL 862308, at *2-3. Suffice to say, the *Janssen* case did not involve "virtually identical facts" as Petitioners assert. Pet. at 10.

The same is true of another case Petitioners tout, *Chin*, which also supports Relator's position. In *Chin*, the court noted that "[i]f 'Defendants propose to use the mere involvement of ... counsel as a[n] inferential sword with respect to intent[,]" then "[t]o counter such an inference, the Government [will be] entitled to probe the communications between these attorneys and Defendant.'" 2024 WL 2883366, at *3 (*citing United States v. Liberty*, No. 2:19-CR-00030-GZS, 2020 WL 6386388, at *3 (D. Me. Oct. 30, 2020) (rejecting defendant's attempt to "thread the needle" of invoking the presence of counsel as a mens rea defense without implicating waiver)). The *Chin* court noted, however, that the defendants had not yet confirmed their intent to introduce any such argument or the above-cited potential evidence at trial, so a waiver determination was premature. *Chin,* supra *(citing In re XYZ Corp.,* 348 F.3d at 25).

Of course, the opposite is true here, where Petitioners have confirmed their intent to introduce argument and evidence regarding their attorneys' advice and involvement in the PPP loans, even if they claim they are not invoking a formal advice of counsel defense. 2024 WL 2883366, at *3 (*citing United States v. Gorski*, 36 F. Supp. 3d 256, 268 (D. Mass. 2014) ("[A] defendant cannot put his attorney's advice or involvement at issue in a case and then claim a privilege as to the details of that advice or involvement."). At a minimum, Petitioners are attempting to "thread the needle" by raising their good faith belief defense and invoking the presence of counsel as an inferential sword with respect to the scienter issue, which the *Chin* court noted they cannot do without effecting a waiver. As the *Chin* court noted, by doing so, to counter such an inference, Relator is entitled to probe the communications between Petitioners and their attorneys regarding the PPP loans. *Chin*, supra (*citing Liberty*, 2020 WL 6386388, at *3).

In short, Petitioners, although unwilling to concede this, by their words and actions have, in fact, intentionally asserted a defense of advice of counsel, meaning they have made a conscious decision to inject advice of counsel as an issue in the litigation. Petitioners have effectively invoked an advice of counsel defense, but couched in the terms of "involvement of counsel" in an effort to preclude discovery. This was a tactical decision but one which comes with consequences. *See In re XYZ Corp.,* 348 F.3d at 24.

21

### 2. Petitioners Have Already Used and Relied on Privileged Communications

Petitioners also assert that they will not use privileged communications at trial. Pet. at 17-20. Petitioners again argue that the district court erred where (they claim) it found waiver based on Petitioners' mere production of redacted documents and responses to interrogatories and deposition questions. With this argument, Petitioners merely rehash the same argument they already made in opposing Relator's Motion to Compel, which Relator addressed in his Reply and the district court rejected in its Order. Ex. D at 3-8; Ex. A at 3-4. As detailed above, Petitioners rely on numerous arguments, documents and testimony that were based on and/or prepared with the advice of counsel to support their subjective good faith defense. *See* supra at 8-10. Again, it is not just Petitioners' disclosure of documents and information in discovery that warrants a waiver of the attorney-client privilege, but also their affirmative acts of raising a good faith belief defense and their *use* of the documents and information to support that defense that warrants a waiver.

For these reasons, all of the cases Petitioners cite are inapposite. Pet. at 17-19. Petitioners' reliance on *In re Itron, Inc.* is particularly misplaced. In that case, the Fifth Circuit addressed whether a plaintiff waived its attorney-client privilege merely by filing a lawsuit in which attorney-client communications were relevant. 883 F.3d 553, 556 (5th Cir. 2018). The Fifth Circuit said that it could not hold that waiver occurred "whenever the client files a lawsuit to which privileged

22

communications, if disclosed, might prove 'highly relevant'–even if the client never relies on or uses those communications to make her legal case." *Id.* at 560 (emphasis added). Nothing of the sort is present here. Petitioners are affirmatively using and relying on the opinions of attorneys and communications with them as part of their good faith belief defense. So, *In re Itron, Inc.* provides no help for them.

*Henry v. Quicken Loans, Inc.* presents a similar factual scenario to this matter and specifically addresses Petitioners' argument that Relator solicited the subject information and documents in discovery and that their witnesses, when deposed, had no choice but to testify that they had consulted counsel when making pivotal decisions about the PPP loans, but by doing so had not waived attorney-client privilege. In *Henry*, the defendant "affirmatively asserted advice of counsel as a basis for its good faith" by stating that counsel "confirmed" the party's understanding and reinforced its good faith efforts to comply with the law. 263 F.R.D. at 470. The court in *Henry* distinguished a defendant's argument that its conduct actually was legal, which would not result in any waiver, from an argument that a defendant acted in good faith belief that its actions were legal, and held:

> By including consultations with counsel as a basis for its good faith, [the defendant] has transformed the defense of good faith into a 'good faith reliance on counsel' defense. Once the defendant has relied (even in small part) on privileged communications to make its case, fairness requires that the privilege be put aside in order for the plaintiff to test the defendant's contentions.

*Id.* That is what Petitioners have done here.

Petitioners next submit that the onus should be on Relator and the district court to police Petitioners at trial by objecting to their introduction of evidence or giving jury instructions. In support of that proposition, Petitioners cite *Neece v. City of Chicopee*, 106 F.4th 83, 98 (1st Cir. 2024). But that case, too, is readily distinguishable. Unlike Petitioners, the party invoking privilege in *Neece* was not raising a good faith belief defense nor did it "selectively disclose information helpful to its cause while concealing other information that was unhelpful." *Id.* at 100.

Petitioners' argument is also disingenuous. Petitioners twice note their intention to move for summary judgment. Pet. at 5, 11. It would be fundamentally unfair to permit Petitioners to use the testimony and various redacted emails and other documents that were informed by and prepared based on advice received from Petitioners' counsel to support their good faith belief defense at summary judgment while at the same time precluding Relator from reviewing the communications and advice Petitioners received from their attorneys on this issue.

### 3. Petitioners Resort to Hyperbole and Fear Mongering

Petitioners resort to hyperbole and seek to stoke fear by arguing that the district court's ruling will "undercut foundational principles of the American legal system" and that the ruling is "especially pernicious in the FCA context", where the FCA's scienter element refers to a defendant's knowledge and subjective beliefs in

24

light of the Supreme Court's ruling in *Schutte*, 598 U.S. at 749.  Pet., p. 20-21.  This is yet another example of Petitioners' lack of candor.  Relator never argued, and the district court never ruled, that Petitioners waived privilege simply by consulting with counsel or *denying* that they acted with scienter, which as they note is an element of any FCA case.  Rather, it is their affirmative acts of raising a good faith belief defense and their use of the documents and information colored by legal advice to support that defense that is at issue.[3]

Nothing in the district court's ruling prevents Petitioners from denying they acted with scienter or otherwise would "kidnap the truth-seeking process" as Petitioners claim while turning this Court's holding in *In re XYZ Corp.* on its head.

---

[3] Although not germane to the issues raised in the Petition, Relator pauses to correct two fundamental misstatements about the *Schutte* ruling made by Petitioners.  First, the Supreme Court did not rule that a defendant's "subjective belief" is an "essential element" of a FCA claim, as Petitioners assert throughout their Petition.  Pet. at 3, 15, 21, 27.  The Supreme Court held that the "[t]wo essential elements of a FCA violation are (1) the falsity of the claim and (2) the defendant's knowledge of the claim's falsity" and that "[t]he FCA's scienter element refers to [the defendant's] knowledge and subjective beliefs."  598 U.S. at 747, 749.  Second, Petitioners incorrectly state that, after *Schutte*, at trial a relator must show that the defendant is "aware"—or at least "conscious of a substantial and unjustifiable risk"—when presenting false claims.  Pet. at 3.  The Supreme Court did not establish a new three-part test for "reckless disregard" for which Petitioners appear to advocate—i.e., (1) conscious of a (2) substantial and (3) unjustifiable risk that their claims are false.  The Supreme Court did not limit the type of evidence that relators can use to prove that defendants acted with reckless disregard or impose a heightened standard for evaluating such evidence, much less establish a new three-pat test for reckless disregard.  Recklessness under the FCA still includes an objective component after *Schutte*.  598 U.S. at 751 n.5.

Pet. at 21. Because Petitioners have introduced into the litigation privileged communications to be used as a sword for tactical advantage, those communications, and undisclosed communications of the same subject matter, are discoverable. And for good reason: "[w]ere the law otherwise," a party wielding the privilege—just as Petitioners do here—"could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments," and by so doing, "kidnap the truth-seeking process." *In re XYZ Corp.,* 348 F.3d at 24.

## III.  Petitioners Have Other Adequate Sources of Relief

### A.  A Post-Judgment Appeal is Adequate and Available

To prevail on the merits of a mandamus petition, Petitioners must show that no other adequate alternative remedy exists. *In re Tsarnaev*, 780 F.3d at 19. They fail to make such a showing for at least two reasons.

First, the Supreme Court concluded in *Mohawk Industries, Inc.* that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege." 558 U.S. at 109. That is so because "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Id. See also United States v. Gorski*, 807 F.3d 451, 458 (1st Cir. 2015) (applying *Mohawk*). Under *Mohawk's* logic,

26

Petitioners cannot obtain mandamus relief unless they show why, under the facts of this case, a post-judgment appeal is inadequate.  Petitioners have failed to do so.

Second, Petitioners also fail to accept another path that, though burdensome, would allow for immediate appeal: disobeying a court order, being held in criminal contempt, and then appealing the contempt order.  *See In re Grand Jury Subpoena*, 909 F.3d at 28-29; *Bennett*, 54 F.3d at 20.  While Petitioners dismiss the notion of subjecting themselves to a criminal contempt order, the option is nonetheless available to them.  *See In re Recticel Foam Corp*., 859 F.2d at 1002 (noting option of electing not to comply and being adjudged in criminal contempt). Contrary to their assertions, Petitioners could refuse to disclose the documents at issue and face sanctions such that a contempt proceeding could be initiated to ultimately provide the judicial review they seek.  By failing to avail themselves of that option, Petitioners fail to show that no adequate alternative remedy exists.

### B.    Petitioners Fail to Show Irreparable Injury

Mandamus also requires a showing of irreparable injury, *In re Tsarnaev*, 780 F.3d at 19, yet Petitioners have not credibly demonstrated how the documents at issue in this case, in being disclosed, would irreparably harm them.  The Court entered a protective order in this case, which Petitioners have liberally relied upon to designate nearly every document produced in this case as "Confidential" or "Attorney's Eyes Only."  As the Supreme Court noted in *Mohawk*, "protective orders

are available to limit the spillover effects of disclosing sensitive information." 558 U.S. at 112. The parties agreed to a protective order ensuring that the documents at issue could be used only in connection with this litigation and could not be publicly disclosed. That protective order refutes Petitioners' claim of irreparable harm.

## IV. The Equities Do Not Favor Issuance of the Writ

Given Petitioners' failure to meet the prior two standards, they are not entitled to test the balance of the equities. But even then, the balance of the equities does not favor Petitioners, whose arguments, as explained above, are built on the false premise that they have not injected privileged communications into this case to support their good faith belief defense. As the district court determined, fundamental fairness requires discovery into the advice Petitioners received from their attorneys regarding the PPP loans. Ex. A at 3-4.

Petitioners repeat their argument that the district court's ruling, if allowed to stand, would be "especially debilitating in the FCA context" in light of *Schutte*. Pet. at 27. Petitioners' Hobson's Choice argument is just more fear mongering. It is also pretextual. What the Petitioners really want—or, more specifically, what their FCA defense counsel want—is to use this case as a toehold to establish far-reaching precedent to allow current and future well-heeled FCA defendants to use attorney-client privilege as both a shield and a sword in all FCA cases.

Petitioners—like all FCA defendants—are free to raise a good faith defense that does not rely on advice they received from counsel. Petitioners were free to assert that they *acted* in good faith by merely presenting objective facts concerning the steps they took to comply with the law without putting at issue their understanding of the law or compliance with the law. But Petitioners made a tactical decision to go further. Because Petitioners chose to assert their subjective good faith *belief* in their compliance with the law—and are relying on documents and testimony built on advice of counsel—they implicate advice they received with respect to the PPP loans from their counsel, even if they also might seek to establish their good faith legal compliance through other acts. Contrary to Petitioners' characterization, this is not a novel concept and Relator cited numerous supporting cases here and in his Motion to Compel. Ex. B at 10-12.

Moreover, as the Supreme Court noted in its *Schutte* decision, the several forms of scienter for FCA-case purposes track the traditional common-law scienter requirements for claims of fraud, which generally focuses on the defendant's lack of an honest belief in the statement's truth. 598 U.S. at 751. The advice of counsel defense is not limited to FCA cases and is used in fraud cases and in various other types of actions where a defendant's subjective belief is relevant, such as actions alleging willful patent infringement, *see In re EchoStar Communications Corp.*, 448 F. 3d 1294, 1299 (Fed. Cir. 2006), violations of securities laws, *see Bilzerian*, 926

F. 2d at 1290-93, or even as evidence that an importer used reasonable care in importing products under the Customs Modernization Act, *see U.S. Customs and Border Protection, What Every Member of the Trade Community Should Know About: Reasonable Care*, p. 12 (September 2017) ("Have you consulted with a Customs 'expert' (e.g., lawyer, . . . ) regarding the correct country of origin/proper marking of your merchandise?"). The point is, Petitioners' Hobson's Choice argument is nothing but more hyperbole because a FCA defendant's mere denial of scienter does not result in an automatic waiver of the attorney-client privilege.

As Petitioners allude, both the respondents and amici in *Schutte* argued to the Supreme Court—just as Petitioners argue now—that a scienter rule implicating subjective beliefs would lead to litigation of advice received from counsel. *See Respondents' Brief,* 2023 WL 2626898, at *54 and *Brief of Chamber of Commerce of the United States of America, et al.,* 2023 WL 2730872, at *26, *Schutte*, 598 U.S. 739 (No. 21-1326). The Supreme Court was well aware of the FCA Defense Bar's concerns regarding waiver of attorney-client privilege in issuing its ruling and declined to consider those concerns in light of the FCA's clear statutory text. 598 U.S. at 758.

Privilege creates options—parties can waive privilege if privileged communications exculpate them. If privileged information condemns them, they may be able to protect it from disclosure (unless an exception like crime-fraud

applies). But they can't have it both ways. Nothing in *Schutte* changes that result. Petitioners concede (as they must) that FCA defendants waive privilege where they rely (expressly or impliedly) on privileged legal advice, which is exactly what they do here even if they won't admit it. Pet. at 13-14. Petitioners made a tactical decision and must live with the consequences. *In re XYZ Corp.,* 348 F.3d at 24.

Lastly, Petitioners reliance on an unpublished Special Master's order from a California district court—*United States ex rel. Poehling v. UnitedHealth Grp., Inc*., No. 2:16-cv-08697 (C.D. Cal. May 13, 2022)—is also misplaced because, again, Petitioners start from the false premise that they are not using privileged communications as a basis for their good faith belief affirmative defense. Unlike this case, the defendant in *Poehling* had neither raised a good faith belief affirmative defense nor relied on attorney-client communications to support that defense. Ex. K at 17. Once again, Petitioners' attempt to paint the district court's Order as an outlier fails once the Court peels back the various layers of Petitioners' mischaracterizations.

## CONCLUSION

Petitioners' unhappiness with the district court's Order is not a basis for mandamus. Petitioners have not shown any manifest error of law or other basis to warrant mandamus and therefore fail to meet the requisite standard. The Petition should be denied.

Respectfully submitted,

DUFFY & SWEENEY, LTD.

/s/ Eric E. Renner
Eric E. Renner (CA1# 1136562)
321 South Main Street, Suite 400
Providence, RI  02903
Phone: 401-455-0700
Fax: 401-455-0701
Email: erenner@duffysweeney.com

*Attorneys for Plaintiff, United States of America ex  rel James R. Berkley*

Dated: August 23, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 28(a) and 32(a)(7), I hereby certify that this brief complies with the type-face limitations set forth in Fed. R. App. P. 32(a)(5)(A) and the type-style limitations set forth in Fed. R. App. P. 32(a)(6).  This brief contains 7,795 words, excluding those portions exempted by Fed. R. App. P. 32(f), as calculated by the word count feature of Word for Microsoft 365.  This motion was prepared in a proportionally spaced font, using Word for Microsoft 365, in 14-point Times New Roman.

/s/ Eric E. Renner
Eric E. Renner

## CERTIFICATE OF SERVICE

I, Eric E. Renner, hereby certify that on this 23rd day of August, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the Court's appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.


/s/ Eric E. Renner
Eric E. Renner